## 8077

### STATE v. JONES.

1. THE INSTRUCTION, "You are prepared to hear the charge of the Court and to retire after hearing that charge and go over the testimony and extricate from the testimony the truth of the case," is not on the facts, but was general and simply required the jury to ascertain the truth of the case from the testimony.

2. SELF-DEFENSE.—THE INSTRUCTION, "So when a man strikes another a blow and that man acting under the influence provoked by the blow shoots and kills, that is a clear case of manslaughter," when considered in its connections, and the whole charge was not a statement of facts, but a hypothetical statement, and could not have the effect of excluding the doctrine of self-defense which was elsewhere fully given.

3. IBID.—The Court did not limit the doctrine of not retreating to cases where firearms or some dangerous weapon was drawn for use, or being used, but instructed the jury that one may stand and take the life of his assailant where the necessity is either real or apparent to a man of ordinary reason and firmness.

4. CHARGE—REQUESTS.—Where the record shows that all requests by appellant were read by the Court, and none objected to, refused or modified, there is no ground for an exception that any of the requests were refused.

5. REASONABLE DOUBT—PREPONDERANCE OF EVIDENCE.—The instruction here complained of held, when construed with its context, to have informed the jury that the defense of self-defense must be proved by the preponderance of the evidence, but on the whole case the guilt of the accused must appear beyond a reasonable doubt.

6. NEW TRIALS—JURORS.—Where appellant does not satisfy the trial Court that he has used due diligence in ascertaining if a juror is over age, or is not a qualified elector, or that the juror is in fact over age, and the record not showing his conclusions contrary to the evidence, its findings will not be disturbed.

    What a party alleging a juror is disqualified must show to entitle him to a new trial, stated.

Before MEMMINGER, J., Orangeburg, January term, 1911. Affirmed.

Indictment against John J. Jones. Defendant appeals.

*Messrs. Wolfe & Berry, Glaze & Herbert* and *C. P. Brunson,* for appellant, cite: *Qualification of jurors:* 54 S. C. 128, 148; 55 S. C. 90; 56 S. C. 379; 73 S. C. 518; 74 S. C. 464; 79 S. C. 119; 80 S. C. 45, 349; 89 S. C. 260; 86 S. C. 49.

*Solicitor P. T. Hildebrand* and *Messrs. Raysor & Summers,* contra. *Messrs. Raysor & Summers* cite: *Qualification of jurors: Mew* v. *R. R.,* 55 S. C.      ; 74 S. C. 465; 83 S. C. 221; 80 S. C. 44; 79 S. C. 116; 89 S. C. 260.

January 6, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The appellant, John J. Jones, tried under an indictment charging him with the murder of Abe Pearlstine, was convicted of manslaughter and sentenced to ten years and one month in the penitentiary.

The Court instructed the jury: "You are prepared to hear the charge of the Court and to retire after hearing that charge and go over the testimony and extricate from the testimony the truth of the case." By his first exception appellant contends that this was a charge on the facts, in that it in effect declared that there was both truth and falsity in the testimony.

The charge was general and did nothing more than require the jury to ascertain the truth of the case from the testimony. No testimony was singled out as true or false, and there was nothing to indicate the Court's opinion of the testimony one way or the other.

The second and third exceptions were withdrawn.

The fourth exception complains of the following language in the charge: "So when a man strikes another a blow and that man acting under the influence provoked by the blow, shoots and kills, that is a clear case of manslaughter," the contention being that the charge excluded self-defense and was a statement of facts in the case.

The context shows that the Court was instructing the jury as to the distinction between murder and manslaughter and that the facts were stated hypothetically, as appears by the following extract embracing the portion to which exception is taken: "Now the killing of a human being in sudden heat and passion is not always manslaughter. A man may kill another that way and it may be murder. The test is was the sudden heat and passion engendered by such provocation as the law recognizes. The law recognizes a blow as a provocation. If a man strikes another a blow and he becomes provoked by the blow and acts under the influence of that provocation and shoots and kills, then the law reduces the killing from murder to manslaughter, unless sufficient time elapsed between the striking of the blow and the killing in which a man of ordinary reason, prudence and caution should have cooled, and would have cooled from the provocation. That is a matter for the jury. The law says that a man must cool in such time as a man of reasonable firmness and prudence and caution would have cooled in and should have cooled in; *so when a man strikes another a blow and that man, acting under the influence provoked by the blow shoots and kills, that is a clear case of manslaughter,* but if any time intervenes between the striking of the blow and the firing of the fatal shot then it is for the jury to say whether that time that has elapsed was sufficient to constitute cooling time. That is if a man of ordinary reason and firmness and prudence would have cooled. If such time has elapsed then the provocation can not be invoked as an excuse."

After this charge the Court immediately proceeded to instruct as to the law of self-defense. It was not error in stating the distinction between murder and manslaughter to omit immediate reference to the law of self-defense. All the law of a case need not be stated in a single proposition. It is sufficient if the charge as a whole declares the law appli-

cable to the case. *State* v. *McKellar,* 85 S. C. 240, 67 S. E. 314.

The fifth exception complains that the Court erroneously charged the law regarding the rule or doctrine of retreat, in respect to the plea of self-defense, limiting the right to stand one's ground to cases where a firearm or some dangerous weapon was actually drawn for use or being used, thus depriving the defendant of the right to act on appearances and stand his ground if he reasonably apprehends that his assailant is armed and seeks favorable opportunity to draw and use his weapon.

The charge is not subject to the criticism stated, as a reference thereto will show that the Court charged that one assailed is not required to retreat, "if by so doing he would probably endanger his safety." The whole instruction on this point gave the defendant the benefit of the law that the necessity to kill must be either real or apparent, to be determined by the jury, in view of the circumstances surrounding the defendant, and by applying the rule that the defendant must believe and act as a man of ordinary reason and firmness would in such circumstances. The law was correctly declared in conformity with the rule thus stated by Mr. Justice Hydrick in *State* v. *McKellar, supra:*

"If one can with reasonable safety to himself retreat and thereby avoid the necessity to strike in self-defense, then the necessity for which the law will excuse him for striking can not be said to exist."

The sixth exception was abandoned and the seventh, eighth and ninth exceptions will be considered last.

The tenth exception complains that the presiding Judge refused to charge defendant's first, third, fifth, eighth, ninth, and tenth requests to charge. The record shows that defendant presented eleven requests to charge in writing and that the Court read them all to the jury and that he did not object to, modify, or refuse to charge any of the requests mentioned in the exception. Under these

circumstances we are bound to assume that instruction was intended to be given in accordance with the requests read to the jury. Moreover the general charge as a whole substantially covered the law applicable to the case.

The eleventh exception assigns error, in the charge to the jury: "The law is that every material element of the case must be proved beyond a reasonable doubt," the ground of objection being that defendant had interposed a plea of self-defense and that such material element in the case was only to be proved by the preponderance of the evidence. We fail to see any merit in this exception. The Court was instructing the jury with respect to the case which the State was required to prove, and in another portion of the charge the jury were instructed to acquit the defendant if his plea of self-defense was made out by the preponderance of the evidence, and further to acquit defendant unless they were satisfied beyond a reasonable doubt that his plea of self-defense was not made out. The defendant has no ground to complain of the charge as it gave him full benefit of the rule established in this State that where self-defense is pleaded to an indictment the defendant must establish it by the preponderance of the evidence, but at the same time the guilt of the accused must be made to appear beyond a reasonable doubt. *State* v. *Welsh,* 29 S. C. 4, 6 S. E. 894; *State* v. *Bodie,* 33 S. C. 132, 11 S. E. 624; *State* v. *McDaniel,* 68 S. C. 37, 47 S. E. 384.

The seventh, eighth and ninth exceptions allege error in the refusal to grant a new trial because one of the jurors, A. E. Rutland, was disqualified by age to serve as a juror.

The Constitution, art. V, sec. 22, provides: "Each juror must be a qualified elector under the provisions of this constitution between the ages of twenty-one and sixty-five years and of good moral character." It is contended that the juror was over sixty-five years at the time of the trial in January, 1911. At the time of the motion juror Rutland was absent and no affidavit from him

as to his age was presented.    There were affidavits in which the affiants swore that Rutland told them that he was sixty-five years old in September before the trial.    It also was made to appear that Rutland was not registered as an elector in Liberty township where he was residing, but was registered in Willow township, Orangeburg county, in 1908, where his age was stated to be sixty-two, which if true would make him less than sixty-five at the time of the trial. It appeared also by affidavit that neither defendant nor any one of his counsel knew at the time of the trial that Rutland was over age.

It was incumbent on movant to show (1) the fact of disqualification, (2) that it was unknown before verdict and (3) that he was not negligent in making discovery of the disqualification before verdict.    The Circuit Court ruled as follows:

"My finding is that considering the fact set out in the affidavits there was no sufficient diligence shown.    The jurors had been drawn for fourteen days before Court, and I believe that it is conceded that the names were published in the county papers a week or ten days before Court convened, this gentleman was well known in the community and the lawyers had the list of the jurors in their hands and there were important cases to be tried and as every one knows the list was gone over by the lawyers and every one interested in the case.    The slightest inquiry would have made known the fact that the juror was over age.    If he had been asked I have no idea but that he would have told the truth.    The juror was brought up and presented and it was quite possible that he might have been near the age of disqualification. You went ahead and swore him on the jury and did not exercise that diligence which is required.    I would certainly overrule the motion for a new trial on that ground, considering the facts that are before me.    I think it is a fair question for debate as to whether the gentleman was over sixty-five years or not.    Very often a gentleman of that age is

uncertain as to his age, very possibly he might have been under sixty-five.

"It is very unfortunate that he was not asked the question as to his age before he was sworn, instead of waiting until afterwards."

It thus appears that movant failed to satisfy the Court as to the fact of disqualification and as to the exercise of due diligence in making discovery of the disqualification, if such existed. We can not upon the record say that the conclusion of the Circuit Court was contrary to all the evidence, or that the ruling was an abuse of discretion.

The failure to exercise due diligence in the use of easily available means of discovering whether a juror is disqualified by age or from not being a qualified elector was fatal to the motion for a new trial. *Blassingame* v. *Laurens*, 80 S. C. 46, 61 S. E. 96.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.